## Secrist *against* Secrist.

J. and S., take land at an appraisement, subject to legacies of 100 pounds per year, for 32 years, and 96 pounds per year dower to a widow. S. sells to J., who is to pay the legacies and dower, and a balance to S. After this, the widow forgives her dower to J. This does not entitle S. to any part of it, nor does it hasten the time of the balance to him, which does not become due till the legacies are paid, and then is all due.

ERROR to the common pleas of *Franklin* county.

Solomon Secrist against John Cook, administrator of John Secrist, deceased. Covenant. Case stated for the opinion of the court, on the following facts, subject to a writ of error by either party.

" John Secrist made his will, proved on the 23d of March 1798. The real estate, mentioned in the will, was appraised and divided, and taken at such appraisement and division by Solomon Secrist, plaintiff, and John Secrist, the defendant's intestate, as per agreement, dated the 28th of March 1809. On the 7th of April 1812, Solomon Secrist sold, by articles of agreement, to John Secrist, defendant's intestate, a portion of his said purpart. At the date of this latter agreement, the said Solomon Secrist had not paid any thing towards any of the legacies, either to his mother, Mary Secrist, or to his brothers and sisters. Soon after the date of the latter agreement, John Secrist, defendant's intestate, paid some money to Mary Secrist, widow of the testator, on account of her interest, under the will, but the said John Secrist got the same money back again, and the said John Secrist has not since paid any money to said widow, on account of dower or interest, nor his administrator since his death. The said widow died in April 1823, after making her will. The said widow did not, in her life time, nor her executor, since her death, claim any thing, on account of her interest, under said will, from John Secrist, in his life time, nor from his administrator, since his death, and no such claim will be made, nor is the estate of John Secrist liable to the estate of said Mary Secrist for such claim. The said John Secrist has paid, and his estate is liable to pay 3222 dollars 22½ cents, for Solomon Secrist, under said agreement of the 7th of April 1812, to the legatees of said will, exclusive of the said widow. This left a balance of 777 dollars 77½ cents, of the purchase money, under the agreement of the 7th of April 1812, to be paid by John Secrist, or his estate, to Solomon Secrist.

" The question presented to the court is, when, and at what times and in what portions this balance was payable to Solomon Secrist.

" No advantage is to be taken, on account of no deed having been executed and tendered by Solomon Secrist before suit brought.

[Secrist v. Secrist.]

" John Secrist and his administrator, since his death, paid the 100 pounds per annum, under the will, so far as due. No payments were made to Solomon Secrist by John Secrist, who died in December 1829, in his life time. But the administrator of John Secrist, and the guardian of his children, hold notes against Solomon, payable with interest, as follows, which are to be credited on the balance of the purchase money, whenever it became or becomes due.

" On the 29th of March 1835, 91 dollars 28 cents; on the 17th of March 1836, 279 dollars 40 cents; on the 9th of April 1833, 78 dollars 53 cents; on the 9th of April 1833, 15 dollars 61 cents; on the 1st of April 1835, 201 dollars 21 cents.

" The court to decide, whether on this statement of facts, any thing is due from defendant to plaintiff, and how much, and give judgment accordingly. No execution to issue till deed is made in case there should be judgment for plaintiff."

Will: " I, John Secrist, of Washington township, Franklin county, and state of Pennsylvania, being weak in body but of sound memory and understanding, but considering the uncertainty of this transitory life, do make and publish this my last will and testament, in manner and form following, to wit: First, I commend my immortal sole into the hands of God, who gave it, and my body to the earth, to be buried in a Christian manner, at the discretion of my executors, herein after named, and as to such worldly estate as it hath pleased God to bless me with in this life, I give and devise the same in the following manner, to wit: First, I give and devise all my personal estate unto my beloved wife, Mary, to be held by her until my daughter Catherina shall come of age, and in case of her death, until the surviving youngest of my children, and then she shall only retain and hold the third part of said property, and the remainder thereof is to be equally divided amongst my children, each to have an equal share, and if they cannot agree about the division of the same, all my personal property shall then be sold at vendue, as the executor shall think most proper; and further, I give and devise unto my wife, Mary, all my real estate, to be held by her until my youngest child, as aforesaid, will come of age, to enjoy and occupy the same as she may think proper, and then my real estate is to be sold to two of my sons, viz. to Solomon and John, or if one of them decline, to my son Abraham, or any two of them, which estate is to be appraised by two lawful honest men, chosen by my executors, and whatever sum the said two men will appraise and value the land and premises, to the said two of sons, who will keep the same, shall pay the amount of said valuation unto my other children, retaining to themselves their proper shares, and all my children shall have equal shares, and to be paid in manner following: First, the two of my sons who will keep the land, shall pay 100 pounds per year, unto the rest of my children, that is to say: the first 100 pounds unto my son Abraham, if he doth not become a holder of the land, and the next 100

[Secrist v. Secrist.]

pounds unto my daughter, Elizabeth, and the next 100 pounds unto my daughter, Mary, and the next 100 pounds to be paid unto my youngest daughter, Catherina, and then so on alternatively; and in rotation, until the whole sum of the valuation be fully paid, and my wife, Mary, shall have her dower on the said my estate, during her natural life; and the said two of my sons who will keep the land, shall pay unto her yearly and every year, during her natural life, the interest arising from the third part of the whole valuation or sale of said land; and in case my sons will not keep the land at the appraisement, the land shall be sold by my executors to the best advantage they can.

" And, lastly, I nominate, constitute, and appoint my dear wife, Mary, executrix, and Jacob Frederik, Jun., and my son, Abraham, to be the executors of this my last will and testament, hereby revoking all former will or wills heretofore by me made, and declare this so to be my last will and testament. In witness whereof, I have hereunto set my hand and seal, this 21st day of August 1797."

" An appraisement of the real estate of John Secrist, late of Washington township, deceased, as appraised by Christian Royer, Sen., and John M'Cleary.

" Plantation and mill, valued at 4810 pounds, for two hundred and thirty-one acres, with the usual allowance of 6 per cent."

" Memorandum of a bargain between Solomon Secrist, a son, and one of the heirs of John Secrist, late of Washington township, Franklin county, and state of Pennsylvania, deceased, and John Secrist, one other son and heir of the said John Secrist, deceased, the said Solomon Secrist and John Secrist, agreeable to the last will and testament of the said John Secrist, deceased, was to have and enjoy all the real estate of said John Secrist, deceased, consisting of a plantation or tract of land, in said township, containing two hundred and thirty-one acres and seventy-nine perches, with the usual allowance for roads, with a mill thereon, subject to a yearly and annual payments, to be made to the other heirs of the said John Secrist, deceased, as soon as the youngest heir should arrive at the age of twenty years, agreeable to the said last will; and the said Solomon and John Secrist, being desirous to make a division of said estate between them, have got a division line run between them by Thomas M'Lean, of Antrim township, which line the parties have agreed to be the settled and permanent line between them, and according to the division, the said Solomon Secrist is to have sixty-five acres and fifty-five perches, with the usual allowance of 6 per cent. for roads, together with a mill and all the appurtenances that is thereon, and the water right is to continue to be invested in the said Solomon Secrist, the dam is to stand where it now is, and the said Solomon Secrist is to have a road to and from said dam, and to repair the said dam at his own expense, and is to enjoy all the water as it now runs, except so much as is sufficient to water a small piece of meadow, which piece lies above

VI.—L

said mill, and in time of low water, said John Secrist is only to have the privilege of taking the water for said meadow, on Saturday evenings and using it on said meadow till Monday morning, at which time he, the said John Secrist, is to turn the water into the race which carries the same to the mill; and according to the above mentioned division, the said John Secrist is to have one hundred and sixty-six acres and thirty-five perches, together with all the buildings thereon or thereto, belonging or in any wise appertaining, excepting what is already mentioned concerning the dam and its repairs, and for the within mentioned sixty-five acres and fifty-five perches, the lot belonging to the said Solomon Secrist, he is to pay to the other heirs of the said John Secrist, deceased, agreeable to the said will, including his own share, the sum of 2010 pounds; and the said John Secrist, for the within mentioned one hundred and sixty-six acres and thirty-five perches, the lot belonging to the said John Secrist, he is to pay to the other heirs of the said John Secrist, deceased, agreeable to the said will, including his own share, the sum of 2800 pounds; and the said Solomon Secrist and John Secrist do, by these presents, bind themselves, their heirs, executors, and administrators to make such deed or deeds, or other instruments of writing, as soon as it conveniently can be done, as will be sufficient to confirm each one's share according to the bargain before mentioned, and for the true performance of all and singular, the bargain and agreement, the parties do bind themselves, their heirs, executors, and administrators to the other their heirs, executors, &c., in the penal sum of 4000 pounds, lawful money of Pennsylvania, to be paid by the party who does not comply with the agreement to the party who does comply with the same. In witness whereof, the said parties have hereunto set their hands and seals, this 28th day of March 1809."

" Article of agreement, made and concluded, on the 7th day of April 1812, by and between Solomon Secrist of the one part and John Secrist of the other part, both of Washington township, Franklin county, state of Pennsylvania, witnesseth, that the said Solomon Secrist has sold to the said John Secrist, and by these presents, doth grant, bargain, and sell his mill and six acres of land, situate in the towhship and county aforesaid, and the line is to run as is hereafter mentioned, that is, beginning at a post that Solomon Secrist drove in the ground, at the division line between John and Solomon Secrist, at the orchard fence, the south side of the new house that Wilson and Reilly raised, and from that part along the south side of the stable that said Wilson and Reilly now enjoy, to a post that Solomon Secrist drove in the ground near the tail race, and from the tail race to Cook's line, and along Cook's line as far, and from the first post mentioned, along the division line above the mill, between John and Solomon Secrist, as far as will make six acres of land, and the said Solomon Secrist has given the said John Secrist possession of said mill and land,

on the day and year above written, and for which, the said John Secrist doth agree to pay the said Solomon the full sum of 4000 dollars, as is hereafter mentioned; that said John Secrist is to pay Solomon Secrist's parts of legacies that Solomon is behind, and so on, every year as they become due, until the full sum of 4000 dollars is fully paid, for which the said Solomon Secrist is to sign unto John Secrist all his right and title of said mill and land, for the true performance of which, the parties do hereby bind themselves firmly to each other, in the penal sum of 8000 dollars. In witness whereof, they have hereunto set their hands and seals, this day and year, first above written."

The court below rendered a judgment for the plaintiff, for 1048 dollars 79 cents.

*M'Culloch* and *Chambers*, for plaintiff in error.
*F. Smith*, for defendant in error.

The opinion of the Court was delivered by

Huston, J.—It is of ordinary occurrence that a testator writes a will or directs one to be written, under an idea that, after he is gone, every thing will be done by his executors and devisees in a certain way—and if all was so done by all concerned, no dispute or difficulty would arise in carrying the will into effect. In this case, if John and Solomon had held the mill and farm jointly, until the 3207 pounds 13 shillings and 4 pence, were paid in yearly instalments to the other children, nothing could have been plainer than this will.

No sooner had the property become disposable by the youngest child arriving of age, than it was appraised and immediately taken, at the amount at which it was appraised, 4810 pounds, by John and Solomon, who at once divided the property, but the division was not into equal parts. The part which John took was valued at 2800 pounds; the part of Solomon at 2010 pounds—and thus, in paying the 100 pounds per year, John must pay for his proportion about 58 pounds 4 shillings 3 pence, and Solomon about 41 pounds 15 shillings and 9 pence. Matters stood thus for three years, until the spring of 1812, when three instalments were paid or had become due, and the case does not state whether John had paid up to that time or not. The article of 1812 seems to be founded on the understanding that Solomon had paid nothing either to the legatees or widow. By the will the interest of one third of the sum of which the property was valued, was to be paid annually to the widow—that is, John would be bound to pay about 56 pounds, and Solomon to pay her about 40 pounds per year. But as John's share was valued at 800 pounds more than Solomon's, of course, to equalise them, the above proportions to be paid by each must be changed, and Solomon would have to pay about 100 dollars towards the 100 pounds annually to the

devisees, and about the same sum to the widow.   The case stated
renders it unnecessary to go more minutely into these calculations,
for it finds, "that under the agreement of the 7th of April 1812,
John has paid or his estate is liable to pay, 3222 dollars 22½ cents,
for Solomon Secrist, to the legatees of said will, inclusive of the
widow.   This left a balance of 777 dollars 77½ cents, of the pur-
chase money, under said agreement of the 7th of April, 1812, to
be paid by John Secrist or his estate to Solomon Secrist."

The dispute is, when this 777 dollars 77½ cents became, or is to
become due and payable to Solomon; and in the argument the
claim of the widow and the time of her death, (April 1823,) have
been introduced as affecting the question.

The case states, "soon after the agreement of 1812, John Secrist
paid some money to his mother, on account of his interest under
the will, but that John got the same money back again, and the
said John Secrist has not since paid any money to the said widow
on account of her dower or interest, nor have his representatives
paid any.   The widow died in April 1823, having made a will.
The said widow did not in her lifetime, nor has her executor since
her death claimed any thing on account of her interest under said
will from John Secrist in his lifetime, nor from his administrator
since his death, and no such claim will be made, nor is the estate
of John Secrist liable to the estate of the widow for such claim."

It is evident the demand by the widow or the release or forgiving
her demand had a great effect on the interest of John and Solomon.
To have paid 96 pounds from 1809 yearly till 1823, the estate
would have cost 1300 pounds more than it has now cost.   The
more immediate benefit of her forgiving or releasing her claim, was
to John, who thus was liable for only 100 pounds each year; but it
resulted to the benefit of Solomon also, if she had demanded her
money.   The 4000 dollars which John was to pay Solomon would
have been diminishing at the rate of about 200 dollars per year,
and 2800 of it would have been paid at the widow's death in 1823;
the remaining 1200 would have been all required to pay the
legacies to the children, and at 100 dollars per year would have
been all exhausted in 1835—nothing of this 4000 dollars would
would have been left for Solomon, and he would still be liable for
a portion of the legacies until the last payment fell due in 1841 or 2.
Solomon has received his full share of the kindness of the mother
in renouncing or releasing her claim.   This leaves him entitled to
receive his 777 dollars 77 cents, when the legacies are all paid,
instead of being liable to contribute to the payment of them after
1835.   No time is mentioned in the article of agreement when
this is to be paid, but as the 4000 dollars are to be applied "to pay
the parts of the legacies that Solomon is behind, and so on every
year as they become due," the balance will not become due until
the last of the legacies is paid or is due, and then the whole
balance will be due to Solomon.

[Secrist v. Secrist.]

The last article is not so full and expressive as it might have been; it directs payments of parts of legacies as they become due, to be paid until the full sum of 4,000 dollars is paid; admitting the sums falling due to the widow are called legacies, still the payments to be made to her would depend on the length of her life, or as in this case, on her kindness to her sons. Solomon, as we have seen, will receive his share of that kindness, but it cannot hasten the time of payment to him, which cannot arrive until the last of the legacies falls due, and a part of it must be applied to pay each instalment as it falls due. It is possible, the kindness of the mother may have resulted in greater advantage to John or his heirs, than to Solomon; we have no authority to alter the contract of the brothers on that account; perhaps, if we were to attempt it, we might do what she did not intend, what she would not have done; nay, it is possible, her whole benevolence was intended exclusively for John; she may have supposed John would not be able to pay 200 pounds per year, and forgiven her half of it, to enable him to pay 100 pounds yearly to his brothers and sisters, and may not have even foreseen the benefit which has resulted to Solomon. There is nothing which shows any intention on her part to hasten the time of John's payment to Solomon, and it must remain as the parties agreed to it.

It was understood, that if this court settled the principle on which the claim was to be adjusted, the parties and their counsel would make the calculations; we are of opinion, that the balance which Solomon will be entitled to, will be due, and all due, when the last payment of the legacies is made, or when it falls due and ought to be made.

Judgment reversed.